## STATE, EX REL. JETT ET AL., *v.* IVES ET AL.

[No. 20,806. Filed June 19, 1906.]

1. STATUTES.—*Elections.—Municipal Corporations.—Councilmen.*—The act of 1891 (Acts 1891, p. 33, §3484 Burns 1901), providing that vacancies in certain city offices should be filled by appointment of the common council, did not repeal §12 of the act of 1867 (Acts 1867 [s. s.], p. 33, §3480 Burns 1901, §3047 R. S. 1881), providing that in case of a tie vote for municipal candidates, a new election should be ordered. p. 16.

2. SAME. — *Election. — Municipal Corporations. — Councilmen.*—Section 53 of the act of 1881 (Acts 1881 [s. s.], p. 482, §6286 Burns 1901, §4731 R. S. 1881), providing for special elections in certain cases, applies to cities, and was in force at the time of the passage of the act of 1905 (Acts 1905, p. 219), concerning municipal corporations. p. 17.

3. SAME. — *Elections. — Municipal Corporations.—Tie Vote.*—In determining whether a tie vote for councilmen of a city requires a special election, the court, besides considering the municipal corporations act of 1867 (Acts 1867 [s. s.], p. 33, §12, §3480 Burns 1901, §3047 R. S. 1881) and the general election law of 1881 (Acts 1881 [s. s.], p. 482, §53, §6286 Burns 1901, §4731 R. S. 1881), will consider the act of 1905 (Acts 1905, p. 189, §6), providing that in case of a tie vote for municipal officers, such fact should be certified to the tribunal whose duty it is to issue a writ of election to fill the same, as indicating whether the legislature intended that the act of 1905 (Acts 1905, p. 219), concerning municipal corporations, should repeal all former legislation relating thereto. p. 17.

4. SAME.—*Repealing Clause.*—A repealing clause in form: "All former laws within the purview of this act, except laws not inconsistent herewith and enacted at the present session of the

General Assembly, are hereby repealed," does not repeal all prior legislation which has some relation to the subject of such repealing statute.  p. 18.

5. WORDS AND PHRASES. — *"Purview."* — "Purview" ordinarily means the enacting part, or body, of a statute, as distinguished from the preamble.  p. 18.

6. ELECTIONS.—*Words and Phrases.—"Vacancy."—What Is.*— An election held in advance of the expiration of an office is not an election to fill a "vacancy."  p. 18.

7. SAME. — *Tie Vote. — Vacancy. — Statutes.* — The contingency that a tie vote might be cast at the first election held thereunder does not control the construction of the act of 1905 (Acts 1905, pp. 219, 242, §45) so as to cause the office of councilman to become "vacant" at such election, when it could not become "vacant" thereafter in case of a tie vote.  p. 19.

8. CONSTITUTIONAL LAW.—*Officers.—Vacancies.—Municipal Corporations.*—Article 15, §3, of the Constitution, providing that "whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer * * * shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified," applies to municipal officers.  p. 19.

9. SAME.—*Officers.—Holding Over.*—An officer who holds over because no successor has been elected and qualified, holds by virtue of article 15, §3, of the Constitution, and not by legislative authority.  p. 21.

10. STATUTES.—*Officers.—Vacancies.—Municipal Corporations.*— The failure to elect a councilman does not thereby create a "vacancy" in that office, at the commencement of the new term, by virtue of §45 of the act of 1905 (Acts 1905, pp. 219, 242), providing for filling vacanacies in municipal offices.  p. 21.

11. SAME. — *Construction.—Contemporaneous Legislation.*—The act of 1905 (Acts 1905, p. 219), concerning municipal corporations, must be construed in connection with contemporaneous, kindred legislation.  p. 22.

12. SAME.—*In Pari Materia.—Construction.—Repeal.—Implication.—Presumptions.*—Ordinarily, statutes concerning the same subject-matter, passed at the same session, must be construed *in pari materia,* the presumption against a repeal by implication being strong.  p. 22.

13. SAME. — *Municipal Corporations.—Tie Vote.—Special Election.*—The act of 1905 (Acts 1905, p. 219), concerning municipal corporations, did not repeal §3480 Burns 1901, §3047 R. S.

1881, Acts 1867 (s. s.), p. 33, §12, nor §6286 Burns 1901, §4731 R. S. 1881, Acts 1881 (s. s.), p. 482, §53, providing for a special election for certain municipal officers in case of a tie vote. p. 22.

14. MANDAMUS.—*Tie Vote.*—*Special Election.*—Mandamus lies to compel the proper municipal officers to order a special election, in case of a tie vote for councilmen.  p. 23.

From Carroll Circuit Court; *John C. Nye,* Special Judge.

Action by the State of Indiana, on the relation of William L. Jett and others, against George R. Ives and others.  From a judgment for defendants, plaintiff appeals. *Reversed.*

*William S. Cochrane, Charles R. Pollard* and *John H. Gould,* for appellant.

*William A. Roach* and *Robert C. Pollard,* for appellees.

GILLETT, J.—November 7, 1905, relator Jett and one Julius were opposing candidates for the office of councilman in the first ward of the city of Delphi.  They were the only candidates for said office, and each received sixty-four votes.  The board of canvassers declared, and certified to the city clerk, that no person was elected to said office, and said clerk, in turn, certified said fact to the common council. Relators, voters in said ward, after a demand and a refusal, brought this action to compel the calling of a special election to elect a councilman in said ward.  The court below sustained a demurrer to the petition and alternative writ, and from the judgment which followed relators appeal.

It is the contention of appellees' counsel that there is no law authorizing the calling of a special election to elect a municipal officer where there has been a failure to elect by reason of a tie vote, and they further contend that it was the duty of the common council to await the expiration of the terms of the councilmen in office and then to appoint a councilman to represent said ward.  It is claimed that section forty-five of the act concerning municipal corpora-

tions, approved March 6, 1905 (Acts 1905, p. 219, §3469 Burns 1905), authorized the making of an appointment in such circumstances. The portion of said section which appellees rely on reads as follows: "In case of a vacancy in the office of councilman, from death, resignation or other cause, the common council shall fill such vacancy at a special meeting, to be held at a time not less than ten nor more than fifteen days after such vacancy is discovered by such council; of which special meeting notice shall be given by the clerk as herein required when the council is to fill a vacancy in the office of mayor."

Taking up appellees' contentions in their order, we proceed to examine the legislation which was in force at the time of the adoption of said act. It was provided 1. by section twelve of the general law concerning cities which was passed in 1867 (§3480 Burns 1901, §3047 R. S. 1881), that "should two or more persons have an equal and the highest number of votes for the same office, such board of inspectors shall certify the fact to the trustees or common council, as the case may be, who shall immediately give notice, as in other elections, for a new election, specifying the office to be filled thereby and the ward, if a councilman, in which the poll is to be opened." It was provided by section sixteen of said act (§3483 Burns 1901, §3050 R. S. 1881) that all vacancies in the office of mayor, city judge, clerk or councilmen should be filled by special election. The latter provision was changed, as to vacancies in the office of mayor, clerk and councilmen, by section one of the act of February 26, 1891 (Acts 1891, p. 33, §3484 Burns 1901), but, as we shall show hereafter, in discussing the meaning of the term "vacancy" as applied to a public office, the statute last mentioned in nowise affected the provision of section twelve above quoted. On the contrary, said provision was in full force when said act of 1905 was passed.

Turning to the general act concerning elections, approved April 21, 1881 (Acts 1881 [s. s.], p. 482), which also applies to cities, we find it provided by section 2. fifty-three thereof (§6286 Burns 1901, §4731 R. S. 1881), that "a special election shall be held in the following cases: * * * Third. Whenever two or more persons receiving votes at any election shall have the highest and an equal number of votes for the same office." This act also was in force at the time of the adoption of the act of 1905, *supra,* concerning municipal corporations.

In addition, it is to be observed that two days before 3. the last-mentioned act was approved, a further act concerning elections became a law, wherein it was provided (Acts 1905, p. 189, §6, §6275 Burns 1905): "If two or more persons shall have the highest and equal number of votes for a single office to be filled by the voters of such county or city, such county or city board shall declare that no person is elected to fill such office, and shall certify the same in the statement above provided and when filed the clerk shall certify the fact to the tribunal whose duty it is to supply the vacancies in such office, or to issue writ of election to fill the same as the case may require." While it may be granted that the legislature was in error in assuming that there was any city office which could be filled by appointment in case of a tie vote, yet it is perfectly clear that at the time of the enactment of said section, both under the municipal act of 1867, *supra,* and the general election law of 1881, *supra,* it was the imperative duty of a common council to call a special election to elect a member thereof where there had been a failure to elect by reason of a tie vote. So that when section six, *supra,* of the act of March 4, 1905, went into force, a failure to elect, by reason of a tie vote, created a situation in which, to paraphrase the language of said section, the case required the issuing of a writ of election. We do not, however, attach so much importance to said section as creating a substantive duty as we

do to the fact that, as a statute which gives affirmative recognition to the existence of earlier provisions concerning the calling of special elections in such cases, and which in effect provides for the continued operation of such laws, it is to be reckoned with in determining whether all traces of the prior legislation were obliterated by the act concerning municipal corporations which became a law two days thereafter.

The language of the repealing clause of said last-mentioned act, so far as pertinent to this case, is as follows: "All former laws within the purview of this act except laws not inconsistent herewith and enacted at the present session of the General Assembly, are hereby repealed." Dealing with said repealing clause, and not with the general doctrine of repeals by implication, we think it may be said that said act did not necessarily repeal all prior legislation that may have had some relation to cities and towns. In *State* v. *Reynolds* (1886), 108 Ind. 353, 358, this court quoted with apparent approval the following language, found in *Payne* v. *Conner* (1813), 3 Bibb (Ky.) 180: "The meaning usually attached to this term (purview) by writers on law, seems to be the enacting part of a statute, in contradistinction to the preamble; and we think the provision of the act repealing all acts or parts of acts coming within its purview, should be understood as repealing all acts in relation to all cases which are provided for by the repealing act; and that the provisions of no act are thereby repealed in relation to cases not provided for by it." And see, also, 7 Words and Phrases, title "Purview;" 1 Lewis's Sutherland, Stat. Constr. (2d ed.), §246.

We have been unable to find any mention of the subject of tie votes in the act of March 6, 1905, *supra,* aside from a provision which is found in section fifteen, but that section relates to towns. It therefore becomes material to inquire whether the provision of section

forty-five, which we have quoted, was designed to prescribe the rule of action for the filling of the office. The provision referred to has to do with "a vacancy" in the office of councilman. An election which is held in advance of the expiration of the term of an incumbent of an office is not an election to fill a vacancy. 1 Dillon, Mun. Corp. (4th ed.), §222. Assuming, without deciding, that the two councilmen representing the first ward of the city of Delphi would not hold over until a councilman should be elected and qualified who should alone be entitled to represent said ward; or, in other words, assuming that the present law created a new office, and that the former offices of members of the common council from said ward would expire by limitation, so that an efflux of time would eventually work a vacancy, yet the fact that such a condition of affairs as this might occur at the first election held under the new law is not persuasive that it was the intention of the lawmakers to provide for the event of a tie vote at the first election by authorizing an appointment to fill vacancies, if under the act the effect of tie votes hereafter occurring would not be to cause a vacancy by the expiration of the term of the incumbent of the office.

The language of §3, article 15, of the Constitution of this State is very broad. It ordains that, "whenever it is provided in this Constitution, *or in any law which may be hereafter passed, that any officer,* other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean that such officer shall hold his office for such term and until his successor shall have been elected and qualified." (Our italics.) While it is settled by the decisions of this court that some of the provisions of the Constitution relate solely to the state government, yet, under language as broad as this, referring to any officer who holds office under any law passed after the adoption of the Constitution, it is clear that the reference is broad enough to include munici-

pal officers, and it is our opinion that the provision does extend to them. The section in question has been applied to statutory, elective officers (*State, ex rel.*, v. *Berg* [1875], 50 Ind. 496; *State, ex rel.*, v. *Bogard* [1891], 128 Ind. 480; *State, ex rel.*, v. *Menaugh* [1898], 151 Ind. 260, 43 L. R. A. 408), to an officer elected by the General Assembly (*State, ex rel.*, v. *Harrison* [1888], 113 Ind. 434, 3 Am. St. 663), and to a member of the board of trustees of a school town (*Koerner* v. *State, ex rel.* [1897], 148 Ind. 158). It was declared in the case last cited that, "it is settled that all officers except members of the legislature hold their offices under the Constitution for the term for which they are elected, and until their successors are elected and qualified." It was said in *State, ex rel.*, v. *Harrison*, *supra*, that the policy of such provisions "is to prevent the happening of vacancies in office, except by death, resignation, removal and the like. They rest upon the assumption that the wiser and more prudent course is, in case the electoral body fails to discharge its functions, to authorize the incumbent to hold over until the succeeding election, rather than that a vacancy should occur to be filled by the appointing power."

The constitution of Missouri (Art. 14, §5) contains a section which reads as follows: "In the absence of any contrary provision, all officers now or hereafter elected or appointed, subject to the right of resignation, shall hold office during their official terms, and until their successors shall be duly elected or appointed and qualified." In *State, ex rel.*, v. *Lund* (1901), 167 Mo. 228, 239, 66 S. W. 1062, 67 S. W. 572, the supreme court of Missouri said of this section: "Plaintiff contends that this provision of the constitution does not apply to municipalities, but we are unable to concur in this view, for the following reasons: First, it is broad and comprehensive enough in its terms to include all officers, whether they be state, county, township or municipal, and there is nothing in it which is in-

dicative of anything to the contrary, or which leaves any doubt as to its true meaning. Second, if there existed a doubt as to whether or not it embraces municipalities, that doubt can but be dispelled, when that section is taken into consideration with the various provisions of the constitution which in some way have reference to municipalities." In the course of the opinion from which we have just quoted, the court referred to the holding in *State, ex rel., v. Harrison, supra,* and, in that connection, after setting out the provision of the Indiana Constitution which we are considering, said on page 230 : "It is perfectly apparent from that provision of the Constitution that there was no escape from the conclusion reached by the court, that is, that all officers in that state hold over after the expiration of their terms until their successors are elected, or appointed, as the case may be, and are qualified."

After the expiration of the term fixed by the General Assembly, the tenure, or title, of the officer is not under or by virtue of legislative authority, but by the continuing and superior authority of the Constitution. *State, ex rel., v. Harrison, supra; Koerner v. State, ex rel., supra; State, ex rel., v. Menaugh, supra.* The effect of the constitutional provision is to add "an additional, contingent and defeasible term to the original fixed term, and excludes the possibility of a vacancy, and consequently, the power of appointment, except in case of death, resignation, ineligibility, or the like." *State, ex rel., v. Harrison, supra.*

The act of March 6, 1905, *supra,* was designed as a more or less permanent expression of the will of the legislature, and assuming, as we must, that it was cognizant of the fundamental law in the enactment of the statute, it becomes apparent that in making provision for the filling of vacancies in the office of councilman there was no intent to treat the failure to elect as resulting in a vacancy. *State, ex rel., v. Bogard* (1891), 128 Ind. 480.

This being true, we should be loath to conclude, in the absence of language requiring it, that it was the purpose in the enactment of said statute to blot out all provision for the filling by election of an office, elective by the people, where the regular election had resulted in a tie vote.

Although it is probable that the act in question operates to repeal by implication many prior provisions of statutes relative to cities and towns, yet we cannot consent to the view that it is to be treated as a .thing apart from all the legislation of the State. In *Humphries* v. *Davis* (1885), 100 Ind. 274, 50 Am. Rep. 788, it was said: "A statute is not to be construed as if it.stood solitary and alone, complete and perfect in itself, and isolated from all other laws. It is not to be expected that a statute which takes its place in a general system of jurisprudence shall be so perfect as to require no support from the rules and statutes of the system of which it becomes a part, or so clear in all its terms as to furnish in itself all the light needed for its construction. It is proper to look to other statutes, to the rules of the common law, to the sources from which the statute was derived, to the general principles of equity, to the object of the statute, and to the condition of affairs existing when the statute was adopted. * * * Statutes are to be so construed as to make the law one uniform system, not a collection of diverse and disjointed fragments."

The presumption against a repeal by implication is strong, and where two acts, which apparently supplement each other, are passed at the same session of the legislature, they are to be treated, in the absence of any indication to the contrary, as if they together constituted but one law. Potter's Dwarris, Statutes, 189. But in this case there appears an affirmative intent in the municipal act to uphold all consistent statutes passed at the same session, and this would seem, in view of section six of the election law of 1905,

*supra,* to leave legislation on the subject of tie votes in city elections as it stood before, and, besides, section forty-three of the act concerning cities and towns provides that all city elections shall be held in conformity with the general election laws of the State.

There can be no doubt of the duty of appellees to call a special election. We are of opinion that the court below erred in sustaining the demurrer to the petition and alternative writ.

Judgment reversed, with a direction to overrule said demurrer, and for further proceedings not inconsistent with this opinion.