YOUNGBLOOD ET AL. *v.* MARR.

[No. 1168-S-183. Filed February 2, 1970. No petition for rehearing filed.]

*Marshall F. Kizer, Kizer and Neu,* Plymouth, *Frederick S. Meessen,* Covington, for appellants.

*Arch N. Bobbitt, Rex P. Killian, Ruckelshaus, Bobbitt & O'Connor,* Indianapolis, for appellee.

GIVAN, J.—This is an action in quo warranto brought by the appellants to oust the appellee from the office of Mayor of the City of Covington, Indiana. This appeal is brought directly to this Court under the authority of Burns' Ind. Stat. 4-214.

The facts of this case are uncontested and are as follows:

The appellee, Donald J. Marr, was elected Mayor of the City of Covington, Fountain County, Indiana, in the General Election of November 5, 1963. He subsequently qualified and assumed the duties of said office on January 1, 1964. In the General Municipal Election of November 7, 1967, Appellee Marr was a candidate for re-election and appellant, Donald Youngblood, was the opposing candidate. As a result of the election conducted on November 7, 1967, the appellant and the appellee received an equal number of votes, each receiving 724 votes.

The Canvassing Board of Fountain County thereafter certified to the Clerk of the Fountain Circuit Court that no person had been elected to fill the office of Mayor of Covington by reason of the tie vote, which fact was certified by the Clerk to the Common Council of Covington. The Common Council upon receiving this certification decided at their regular meeting on November 20, 1967, to hold a special meeting on December 2, 1967, for the purpose of taking such action as might be required by law concerning the office of Mayor of Covington. Notice of this special meeting was published in the local newspaper on November 29, 1967.

On December 2, 1967, at its special meeting the Council appointed the appellee, Donald J. Marr, to the office of Mayor for the four year term commencing January 1, 1968. A certificate of election was issued to Appellee Marr, who qualified and who continued in the office of Mayor of the City of Covington as the elected incumbent on January 1, 1968, and has continued in that office since that date.

In the meantime a majority of the newly elected Council held a meeting without notice in the morning of January 1, 1968, to determine what action they should take with regard to the office of Mayor. At the meeting Councilman Romine was elected Mayor pro tem pending publication of notice for a meeting of the Council to be conducted on January 11, 1968, for the purpose of selecting a Mayor.

On January 11, the new council met and allegedly appointed Appellant Youngblood to the office of Mayor. Appellants subsequently filed their quo warranto action to determine who had legal title to the office of Mayor. The Appellee Marr filed answer in general denial with five additional paragraphs of answer and a cross-complaint for injunction seeking to quiet title to the office of Mayor and to enjoin Appellant Youngblood from exercising the duties of the office of Mayor.

Upon trial by court in the Fountain Circuit Court a decision was rendered by The Honorable Howard A. Sommer, Special Judge, whereby the appellants took nothing, the court declared no vacancy existing in the office of Mayor and the appellee was declared to be the duly qualified Mayor of Covington.

Upon the foregoing facts, the appellants have prosecuted this appeal citing as error that the decision of the trial court is contrary to law.

The parties agree that the determination of this case turns upon the application of the following statutes and constitutional provisions which were in effect at the time of the election in question.

Burns' Indiana Statutes Annotated, § 29-5213 (1969 Repl.) reads as follows:

"If two [2] or more persons shall have the highest and equal number of votes for a single office to be filled by the voters of such county, or city, such county board shall declare that no person is elected to fill such office, and shall certify the same in the statement above provided, and, when filed, the clerk shall certify the fact to the tribunal whose duty it is to fill vacancies in such office or to issue writ of election to fill the same, as the case may require. [Acts 1945, ch. 208, § 296, p. 680; 1947, ch. 120, § 33, p. 364.]"

Burns' Indiana Statutes Annotated, § 48-1246 (1963 Repl.) reads as follows:

"In the event of a vacancy occurring in an elective office of any city except the office of mayor or councilman and city judge, by reason of death, resignation or other causes

or in case of disability of any such officer to perform the duties of his office, it shall be the duty of the mayor or acting mayor to fill such vacancy by appointment for the unexpired term subject to the approval of the common council. In case of a vacancy in the office of mayor, in cities other than the first class, the city comptroller in all cities having such office shall act as mayor: Provided, That such officer while acting as mayor shall not perform any duties as comptroller but shall appoint a suitable person to act as comptroller during such time. In cities of the first class, in case of a vacancy in the office of mayor, the vacancy shall be filled by appointment for the unexpired term by the city council from its own elected members. The city clerk shall call an election which shall be held within ten [10] days of said vacancy. Until the vacancy is filled the president of the city council shall act as the interim mayor. The city clerk shall preside at the election and shall vote but only in the event of a tie vote among the members of the city council.

"The votes of a majority of the members of the city council shall be required for election except that one-half of such votes, plus the vote of the city clerk, shall be required in the event of a tie vote among the members of the city council. In the event of the death, resignation or removal of any city judge, such appointment shall be made by the governor of the state. In the event of the death, resignation or disability of the city comptroller and in cities not having a city comptroller the common council shall designate one [1] of its members to act as mayor pro tempore until a special meeting of the council to be held not less than ten [10] days nor more than fifteen [15] days thereafter, at which special meeting the council shall elect a suitable person to fill out the unexpired term of the mayor. Notice of such special meeting shall be given by the city clerk by publication once in a newspaper of general circulation printed in such city. In case of a vacancy in the office of councilman from death, resignation or other cause, the common council shall fill such vacancy at a special meeting to be held at a time not less than two [2] nor more than fifteen [15] days after such vacancy is discovered by such council of which special meeting notice shall be given by the clerk as herein required when the council is to fill a vacancy in the office of mayor. All persons so filling vacancies in elective city offices shall hold only during the unexpired term of any such officer and shall during such incumbency be entitled to the salary thereto attached. However, in any city where there shall be a tie vote for any office, such office

shall be deemed to be vacant and shall be filled as in this act provided: Provided, however, In all cities of the second, third, fourth and fifth class where there shall be a tie vote in the common council to fill any vacancy, the mayor of such city shall cast the deciding vote. [Acts 1905, ch. 129, § 45, p. 219; 1909, ch. 188, § 2, p. 454; 1955, ch. 344, § 1, p. 1104; 1963, ch. 153, § 1, p. 178.]"

Burns' Indiana Statutes Annotated, § 29-4315 (1969 Repl.) reads as follows:

"The several city officials to be elected under the provisions of this act [§§ 29-4312—29-4317] shall take office at twelve o'clock noon on the first day of January, 1948, and thereafter such city officers shall take office at twelve o'clock noon on the first day of January next following their election. Such officers shall serve for four [4] years and until their successors are elected and qualified. [Acts 1945, ch. 229, § 4, p. 1071.]"

The foregoing statutes must be interpreted in the light of the following sections of the Indiana Constitution:

Article 6, § 9, reads as follows:
"Vacancies in county, township, and town offices, shall be filled in such manner as may be prescribed by law."
Article 15, § 3, reads as follows:
"Whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean, that such officer shall hold his office for such term, and until his successor shall have been elected and qualified."

The question is whether or not the situation created by a tie vote did under Burns' § 48-1246 create a vacancy in the office of Mayor of Covington or whether the provisions of Article 15, § 3 of the Indiana Constitution as above set out, require that the incumbent mayor, who is the appellee in this case, continue to hold his office until a successor is elected and qualified.

It is true that Article 6, § 9 of the Indiana Constitution as above quoted, provides that vacancies shall be filled in such

manner as may be prescribed by law. However, we must determine whether or not a vacancy actually occurred in the office of Mayor of Covington as a result of the tie election.

Under the foregoing statute, Burns' § 29-4315, and under Article 15, § 3 of the Indiana Constitution, an incumbent mayor would hold office until his successor is elected and qualified.

In support of their position that the court decision was contrary to law the appellants state that it is well settled that the legislature has the power to provide that a tie vote for a public office may be resolved by means other than by a new election. In support of this proposition they cite several cases, the first of which is *Johnston et al.* v. *State ex rel. Sefton* (1891), 128 Ind. 16, 27 N. E. 422. In that case the applicable statute provided for the tie election to be broken by the casting of lots. The question was raised as to whether or not the casting of lots for an office was in conflict with Article 2, § 13 of the Constitution, which provides that all elections by the people shall be by ballot. The court held that a statute requiring the casting of lots was not in conflict with this particular provision of the Constitution. There was no question raised or discussed in the case concerning the holdover provision of our Constitution. This case merely stands for the proposition that the legislature may provide for the determination of an election which ends in a tie vote. It is not authority for the proposition that the legislature may create a "vacancy" where the Constitution expressly provides that no "vacancy" exists.

Appellants next cite the case of *Wills et al.* v. *State ex rel. Hughes* (1891), 128 Ind. 359, 27 N. E. 423. This case presents the identical question as that presented in the *Johnston* case and cites the *Johnston* case as the sole authority for the above stated proposition.

Appellants next cite the case of *Kimerer et al.* v. *State ex rel. Black* (1891), 129 Ind. 589, 29 N. E. 178. This case also

cites both the *Johnston* and *Wills* cases for the sole proposition that an election board may be compelled by mandate to reassemble and ,to determine a tie election by lot. Again, there is no question concerning the power of the legislature to create a vacancy notwithstanding the holdover provisions of our Constitution.

An examination of the history of the development of Burns § 48-1246 discloses the original statute was passed in 1905. At that time it did not contain the proviso concerning the creation of a vacancy by tie vote. In 1906 the Supreme Court was called upon to interpret the language of the statute in the case of *State ex rel. Jett et al.* v. *Ives et al.* (1906), 167 Ind. 13, 78 N. E. 225. In that case this Court specifically held that Article 15, § 3 of the Indiana Constitution, applies to municipal officers as well as state officers and further held that the occurrence of a tie vote does not create a vacancy in the office in question. The legislature apparently attempting to respond to the Court's decision in the *Ives* case in 1909 amended the statute by adding the proviso that a tie vote would be deemed to be a vacancy. It is appellants' contention that this amendment was a proper function of the legislature and thus validly overcomes the objection raised by the Court in the *Ives* case. With this we do not agree. As previously pointed out, the Constitution expressly provides that an incumbent will hold office until his successor shall have been elected and qualified. Thus by express constitutional mandate so long as there is an incumbent in the office, no vacancy exists, and although as above pointed out, the legislature has every right, and, in fact, a duty to provide for a manner in which to settle a tie vote situation, this does not mean that it has the constitutional right to say that a vacancy occurs, when by the express language of the Constitution none in fact exists. We, therefore, hold that the language in the *Ives* case is just as applicable today as it was in 1906, and that the attempt by the legislature to create a "vacancy" in a public office by reason of a tie vote is of no force and effect.

The appellants also cite the case of *State ex rel. May* v. *Hall* (1909), 173 Ind. 145, 89 N. E. 855, and state that this Court squarely addressed itself to this problem in that case. However, an examination of the *Hall* case discloses that there the Court was faced with the filling of a vacancy in the office of road supervisor for a township district. There the statute expressly provided that "* * * when there shall be a failure to elect a supervisor for any district, and also in case a vacancy shall occur in such office * * *, the trustee of the township * * *, shall appoint a supervisor * * *." In that case the Court held that under the express statutory provision it was the duty of the trustee to make the appointment in the case of a tie vote. We see no parallel between the *Hall* case and the case at bar.

For the reasons above stated we hold that the trial court was correct in finding that no vacancy existed in the office of Mayor of Covington, and that the appellee, Donald J. Marr, continues as Mayor of the City of Covington, Indiana.

The trial court is, therefore, in all things affirmed.

Hunter, C.J., and Arterburn, J., concur; Jackson, J., concurs in result, and DeBruler, J., concurs with opinion.

CONCURRING

DEBRULER, J.—The basic issue presented by this appeal is whether Article 15, § 3, of the Constitution of Indiana applies to officers of municipal corporations. If it does apply, then the General Assembly may not constitutionally create a vacancy in the office of a municipal corporation as a result of a tie vote in an election. If it does not apply then no such limitation on the power of the General Assembly exists. I concur with the resolution of this issue in the affirmative and arrive at this conclusion from what I consider to be the clearest and most obvious meaning of the words of the provision itself and the holding of *State ex rel. Jett, et al.* v. *Ives, et al.* (1906), 167 Ind. 13, 78 N. E. 225, and the supporting cases cited in it.

I do not, however, agree with the analysis and lack of weight given by the majority to the case of *State ex rel. May* v. *Hall* (1909), 173 Ind. 145, 89 N. E. 855. In my judgment this case is directly on point with the case on appeal and fully supports appellants' position that Article 15, § 3, does not create a limitation upon the power of the General Assembly to create a vacancy in a municipal office following a tie vote as it did in Burns' § 48-1246, and that case is, therefore, in direct conflict with the *Ives* case and our holding today. I, therefore, conceive the *Ives* and *Hall* cases to be irreconcilable and the effect of our opinion today to be the overruling of the *Hall* case.

In the event an incumbent municipal office holder, who was not a candidate to continue in office and consequently for whom no one voted, holds over following a tie vote, the termination of his term can be brought about by the election of a successor in a special election called for that purpose.

NOTE.—Reported in 254 N. E. 2d 868.