TOWN OF MARKLEVILLE *v.* MARKLE ET AL.

[No. 30,088. Filed January 4, 1962.]

*Lawrence Booram*, of Anderson, for appellant.

*G. Douglass Owens*, of Pendleton and *William F. Lawler, Jr.*, of Anderson, for appellees.

LANDIS, J.—Appellant town brought suit to condemn real estate and right of way for a sewage treatment plant and sanitary sewer.

Appellees are the owners of real estate sought to be condemned and filed objections to the proceedings setting up that the named trustees of appellant town were not duly elected under the election laws of Indiana and have no power to condemn the lands of appellees as they were not vested with such authority by statute. Trial by the court resulted in finding and judgment for appellees that there was no board of trustees of appellant town to exercise the powers of said town and abating the action until a legally

constituted board of trustees appeared to exist. Appeal followed overruling the motion for new trial.

Appellant town contends on this appeal that the ruling of the trial court was erroneous as it recognized a collateral attack on appellant's condemnation suit by appellees in permitting them to question the right of the incumbent members of the town board of appellant town to hold their respective offices. Appellant contends that a proceeding in quo warranto would be the proper method to attack the right of said trustees to hold office rather than the collateral attack resorted to by appellees.[1]

The facts of this case appear to be as follows:

A convention was called for the purpose of nominating three trustees and a clerk-treasurer of the town of Markleville on August 31, 1951. At the convention attended by some 40 persons Roy Creason, Ermal McCormack, and Palmer Keller were nominated as the three trustees and Valorous Rector was nominated as clerk-treasurer. No candidates of any other party were nominated and no election was held in November, and in January 1952 the then incumbent trustees and clerk-treasurer surrendered their respective offices to the nominees of said convention.

Roy Creason resigned as trustee in November 1955, and at a special meeting of the board of trustees, after notice was given, Robert Stoops was appointed as trustee to succeed Creason. Stoops later resigned and Alan Markle was appointed by the board to fill that vacancy. Mr. Markle resigned January 1, 1959, and the board appointed Frank Ulm to fill the vacancy.

1. See Burns' §3-2001 *et seq.* (1946 Replacement), Acts 1881 (Spec. Sess.), ch. 38, §§814 through 829, p. 240, 380; Acts 1929, ch. 221, §2, p. 806, 807.

Palmer Keller moved from the corporate limits and resigned as of August 31, 1959. Elmer Pasko was appointed by the board to fill Keller's vacancy.

No conventions whatever were held in either the years 1955 or 1959, and the nominees of the convention of 1951 and their successor appointees have continuously held themselves out as officials of the town, and have carried out their duties as such officials. No question was raised as to their right to hold office until appellant town proceeded to acquire real estate for said sewage treatment plant.

Appellees contend no valid election of town officials was held in Markleville in 1951 or at anytime since, and that the nominations made at the convention were by hand vote whereas the election code of Indiana requires voters to ". . . mark their ballots screened from observation. . . ." Citing: Burns' §29-5017 (1949 Replacement), being Acts 1945, ch. 208, §256, p. 680, 846; 1947, ch. 120, §31½, p. 364, 401. Although it is not necessary for a determination of this appeal we believe we should point out that this statute relied on by appellee does not attempt to regulate the manner of conducting town conventions prescribed by law for the nomination by political parties or independent organizations of candidates for town elections.[2] Appellees have further contended, however, that there is no provision in the election laws for electing officials at a town meeting.

---

2. See: Burns' §29-4405 (1961 Cum. Supp.), being Acts 1945, ch. 208, §165, p. 680, 786; 1949, ch. 25, §12, p. 43, 55; 1957, ch. 168, §1, p. 344; 1961, ch. 259, §1, p. 588; and Burns' §29-4413 (1949 Replacement), being Acts 1945, ch. 208, §173, p. 680, 791; 1949, ch. 25, §15, p. 43, 58.

Appellees cite Burns' §48-115 and §48-118, concerning the requirement of election of town officials and the duration of appointments, viz:

" . . . On the first Tuesday after the first Monday in November in the year 1935, and on the same day every four [4] years thereafter, an election shall be held in each and every town in this state for the election of the elective officers of such town. . . ." Burns' §48-115 (1950 Replacement), being Acts 1935, ch. 75, §1, p. 226.

". . . and no appointment shall extend beyond the first Monday of January following the next regular election provided for in this act." Burns' §48-118 (1950 Replacement), being Acts 1911, ch. 3, §1, p. 5.

However, as pointed out by the opinion of the Attorney General of Indiana[3] town trustees have no duty to call an election at the expiration of their term, but the election laws provide for a town election being held at the same time as a city election. Such opinion further makes reference to the statute providing four year terms for town trustees (Burns' §48-115, *supra*), but concludes a town trustee by virtue of Art. 15, §3 of the Indiana Constitution[4] also holds office until his successor has been elected and qualified.

Appellee has cited the case of *State, ex rel.,* v. *Hall* (1909), 173 Ind. 145, 89 N. E. 855, as authority that in Indiana there is no holding over in an office filled by appointment. However, this case only holds

---

3. Opinion of Attorney General 1953, No. 51, p. 239, 240.

4. Art. 15, §3 of the Indiana Constitution provides: "Whenever it is provided in this Constitution, or in any law which may be hereafter passed, that any officer, other than a member of the General Assembly, shall hold his office for any given term, the same shall be construed to mean, that such officer shall hold his office for such term, and until his successor shall have been elected and qualified."

an appointee has no constitutional or statutory right to the office after expiration of his term, *and either the election or appointment and qualification of his successor.* Appellee has overlooked that in the case before us no successor was chosen either by election or appointment to succeed the appointee whose authority to hold over is challenged.

We do not believe Burns' §48-118, *supra,* providing ". . . no appointment shall extend beyond the first Monday of January following the next regular election provided for in this act" was intended to preclude the appointee holding over when he would ordinarily be entitled to do so under Art. 15, §3, *supra,* of the Indiana Constitution, i.e., where no successor was elected and qualified. It is well settled that we should construe statutes in harmony with constitutional provisions, rather than in a fashion repugnant to them, when that can reasonably be done. *Wright-Bachman, Inc.* v. *Hodnett, et al.* (1956), 235 Ind. 307, 316, 133 N. E. 2d 713, 717; *Knoy* v. *Ind. Real Estate Comm. et al.* (1959), 239 Ind. 379, 383, 157 N. E. 2d 825, 828; 5 West's Indiana Law Ency., "Constitutional Law," §38, p. 309. Otherwise a construction contrary to constitutional provisions would compel us to invalidate the statute.

It is of course true that the statutes of Indiana provide for the holding of town elections every four years[5] which admittedly was not complied with in the case at bar. However, appellant has contended that the members of the town board of Markleville from 1951 to the present while not officers de jure were at least officers de facto, within the following definition:

5. Burns' §48-115 (1950 Replacement), being Acts 1935, ch. 75, §1, p. 226.

" . . . A person is a de facto officer where the duties of the office are exercised (1) without a known appointment or election, but under such circumstances of reputation or acquiescence as were calculated to induce people, without inquiry, to submit to or invoke his action, supposing him to be the officer he assumed to be; (2) under color of a known and valid appointment or election, but where the officer had failed to conform to some precedent, requirement, or condition, as to take an oath, give a bond, or the like; (3) under color of a known election or appointment, void because the officer was not eligible, or because there was a want of power in the electing or appointing body, or by reason of some defect or irregularity in its exercise, such ineligibility, want of power, or defect being unknown to the public; (4) under color of an election or an appointment by or pursuant to a public, unconstitutional law, before the same is adjudged to be such. . . ." 43 Am. Jur., "Public Officers," §471, p. 225.

The Court in the case of *McGuirk* v. *State ex rel.* (1930), 201 Ind. 650, 658, 169 N. E. 521, 523, stated:

"All that is required, when there is an office to make an officer *de facto*, is, that the individual claiming the office is in possession of it, performing its duties, and claiming to be such officer under color of an election or appointment, as the case may be. It is not necessary that his election or appointment should be valid, for that would make him an officer *de jure*. *Felker* v. *Caldwell* (1919), 188 Ind. 364, 123 N. E. 794. 'A person whose election to an office is irregular and void, because at the time it was made he was a public defaulter, and hence ineligible under a statute providing that the election of a defaulter to any office of trust or profit shall be void, is nevertheless an officer *de facto*, if he discharges the duties of the office under color of such election.' Constantineau, De Facto Doctrine §158. . . ."

In the case of *Leach* v. *Cassidy* (1864), 23 Ind. 449, where there was a controversy as to the office of school trustee in a town, it was stated:

"All the allegations of *Leach* himself show that *Cassidy* was trustee *de facto*. He was consequently entitled to perform all the duties and exercise all the powers of the office, until ousted by some one having a better right to it. . . ."

We are of the opinion that the nominees of the August 1951 convention, which according to the evidence was the sole convention held that year in the town of Markleville, and there being no election in November 1951, held sufficient color of title to the offices they assumed in January 1952, to constitute them de facto officers of said town.

The filling of the subsequent vacancies that occurred on the board of trustees of the town upon resignation of various trustees from time to time is provided for by Burns' §48-118 (1950 Replacement), *supra,* viz:

"A vacancy occurring in the board of town trustees, or in any other elective office of such corporation shall be filled by appointment by said board at a special meeting of the trustees, called for that purpose of which meeting not less than five [5] days' notice in writing shall be given, to each member of said board of trustees, by the town clerk of said town; but such appointments, if to fill a vacancy in the office of trustee, shall be made from the ward in which the vacancy occurred, and no appointment shall extend beyond the first Monday of January following the next regular election provided for in this act." Acts 1911, ch. 3, §1, p. 5.

Appellant contends that the provisions of the above statute were complied with by the allegedly de facto

officers of the town when vacancies occurred by resignation from 1951 to the present time, and appellee has not disputed this contention. In view of the foregoing discussion in this opinion and the undisputed evidence introduced in the trial court we must conclude the present officers of the town of Markleville constituted de facto officers thereof.

Having reached the conclusion that the officers of the town of Markleville were de facto officers, it must necessarily follow that said town had authority to maintain the instant condemnation action.

This question was presented to this Court in the case of *Joint County Park Bd.* v. *Stegemoller* (1950), 228 Ind. 103, 115, 88 N. E. 2d 686, 690, 89 N. E. 2d 720, where the existence of a municipal corporation was attacked in eminent domain proceedings. We stated in such opinion:

> "A *de facto* corporation may maintain an action in condemnation for uses within its powers. *Morrison* v. *Indianapolis & Western R. Co.* (1906), 166 Ind. 511, 76 N. E. 961, 77 N. E. 744, [9 Ann. Cas. 587], *supra; Roaring Springs etc. Co.* v. *Paducah Telephone Co.* [1914, 109 Tex. Civ. App. 164 S. W. 50, aff. 1919, 109 Tex. 452, 212 S. W. 147]; *Crystal Park Co.* v. *Morton* (1915), 27 Colo. App. 74, 146 Pac. 566. The *de facto* existence of a corporation may not be collaterally attacked in a [sic] eminent domain proceeding. The proper remedy is by an information in the nature of *quo warranto. Joliff* v. *Muncie Electric Light Co.* (1918) [sic 1914], 181 Ind. 650, 105 N. E. 234, *supra;* 43 C. J. 98, §50."

It is our conclusion that the trial court's finding was contrary to law.

The remaining questions raised on this appeal are not discussed as they are not likely to arise on a retrial.

Judgment reversed with directions to sustain appellant's motion for new trial.

Achor, C. J., Arterburn and Bobbitt, JJ., concur.

Jackson, J., concurs in result.

NOTE.—Reported in 179 N. E. 2d 279.

